## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **WILLIAM M. SPEARS, JR.;** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | **Case No.: 1:19-00269-C** |
| | * | |
| **BAY INN & SUITES FOLEY, LLC,** | * | |
| **BAY INN & SUITES LOXLEY, LLC,** | * | |
| **RICK PATEL and RICK PATEL, JR.** | * | |
| | * | |
| **Defendants.** | * | |

## <u>ORDER</u>

This matter is before the Court on four related filings:

1.      Plaintiff's Motion for Partial Summary Judgment (and Incorporated Brief) (Docs. 34, 35, & 36);

2.      Defendants' "Request Motion for Extension of Time" (Doc. 39, PageID.186); and

3.      Defendants' "Motion for Summary Judgments, Extension of Time and for Mediation for the Case" (Doc. 42, PageID.196).

4.      "Request Motion to Dismiss Summary Judgment" filed October 26, 2020 (Doc. 48, PageID.203).

Under S.D. Ala. Gen LR 73(c) and 28 U.S.C. §636(c), this case was randomly assigned to the undersigned Magistrate Judge for all purposes, including entry of a final judgment, as set out in the Notice of Assignment to United States Magistrate Judge for Trial entered June 7, 2019. (Doc. 3, PageID.16) The parties expressly consented to the undersigned conducting all proceedings in this case. (Doc. 23, PageID.99)

No rulings are made with regard to Defendant Bay Inn & Suites of Loxley, LLC as a filing was made on October 26, 2020 (Doc. 49, PageID.207) which suggests that a bankruptcy proceeding has been initiated. The Court makes no findings as to the propriety of that proceeding which appears to have been filed in the United Stated Bankruptcy Court for the Middle District of Florida. All references below to "Defendants" and the Court's rulings do not encompass or refer to Bay Inn & Suites of Loxley, LLC.

As set out below, the undersigned hereby **DENIES** Plaintiff's Motion for Partial Summary Judgment as to Defendants Bay Inn & Suites Foley, LLC, Rick Patel and Rick Patel, Jr. With respect to the assorted motions and "requests" filed by Rick Patel and Rick Patel, Jr. (Docs. 39, 42 & 48), they are all **DENIED**.

## I.      Factual Background.

Plaintiff, William Spears, was employed by Bay Inn & Suites Foley, LLC from May, 2014–November 2016. He was then employed by Bay Inn & Suites Loxley, LLC from November 2016 – February 2019. In both jobs, he lived on-site at the hotels. Before those two jobs, he worked for Bay Inn & Suites Bay Minette, LLC starting in 2011 when he met Rick Patel and Rick Patel, Jr. (Compare Doc. 16, PageID.77-79 and Doc. 34-1, PageID.132).

At the Foley location, Spears usually worked from about 5:00 p.m. – 3:00 a.m. 7 days a week. At the Loxley location, he usually worked from about 5:00 p.m. – 1:00 a.m. on weekdays, and from noon – midnight on weekends. (Doc. 17-1, PageID.82 and Doc. 34-1, PageID.132) Whether employed by the Foley business or the Loxley business, he would sometimes be told by Rick Patel and/or Rick Patel, Jr. to take on additional shifts at the other location, and he was on-call to provide miscellaneous customer service, light maintenance at all times. (Doc. 34-1, PageID.132).

Typically, there were only two front desk employees at the two hotels. (Doc. 34-1, PageID.132) The only people those employees reported to on a day-to-day basis were Rick Patel and Rick Patel, Jr. Both Rick Patel and Rick Patel, Jr. were personally involved in a day-to-day basis in all the operational decisions about the two hotels and there were no other managers or supervisors. The only two people Plaintiff ever reported to were Rick Patel and Rick Patel, Jr. and their supervision was interchangeable. Whichever of them happened to be at the location on a particular day would provide direct supervision. If an issue came up when neither was on location, then Plaintiff would call one or the other for guidance. It did not matter which one he called. Both would provide that supervision. (Doc. 34-1, PageID.132).

Plaintiff was hired by Rick Patel. He received pay from Rick Patel. His usual schedule was subject to being changed at the request of either Rick Patel or Rick Patel, Jr. (Doc. 34-1, PageID.133).

Both hotels regularly had guests who arrived in vehicles with out-of-state license plates, and who checked in providing identification from other states. Both hotels also regularly purchased products for the operation of the hotels (like cleaning supplies, and laundry supplies) from out-of-state companies. (Doc. 34-1, PageID.133).

The only direct payments Plaintiff received in connection with his employment were checks in monthly amounts of $700 from the Foley location, and monthly amounts of $750 from the Loxley location. (Doc. 34-1, PageID.133) The Defendants produced a portion of those transactional records in discovery – monthly checks written to Plaintiff between March 30, 2017 and February 21, 2019. (Doc. 34-1. PageID.134-156).

Plaintiff does not dispute the hours Defendants reported that Plaintiff worked each week which are contained in their verified responses to Interrogatories from the Court.  Therein,

Defendants state that Plaintiff worked 62 hours a week every week from May 29, 2016 – February 24, 2019. (Doc. 16-1, PageID.77-79).

Plaintiff also accepts, for the purpose of the summary judgment motion, Defendants' verified statement that he was provided with lodging during his employment that had a minimum off-season value of $89.95 a day (rounded to $630 per week), with a higher value during the "high season" of between $200-$250 per day. (Doc. 15-1, PageID.71).[1]

The Declaration of Rick Patel explicitly stated that "available supporting pay records will be provided to Plaintiff's counsel" but also that "some pay records have not been located." (Doc. 16, PageID.75).  The only transactional records of payments to Plaintiff produced by Defendants are the bank records of cancelled checks over a partial period of his employment. (Doc. 34-1, PageID.134-156). Plaintiff acknowledges receipt of those payments. Defendants have produced nothing else to substantiate that Plaintiff received any other wage payments.

The monthly pay the Plaintiff received (which varied occasionally) shown by Defendants' checks can be recalculated as a weekly amount by multiplying by 12 and dividing by 52.  Because the checks issued to Plaintiff never equaled $290.00 a week (minimum wage of $7.25 X 40 hours) the amount due for unpaid minimum wage can be calculated by subtracting from $290 the weekly amount of what was paid.[2]

The hourly rate for each week worked can be calculated by adding the weekly payment amount to $630 (the accommodation value) and dividing by the total hours worked (62 hours). Overtime due for 22 hours a week can be calculated by multiplying the resulting hourly rate by

---

[1] The record does not contain any evidence of the number of days when a "high season" rate was applicable or the reasonable specific value that should be allotted to those days.

[2] The Federal minimum wage amount for 2016-2019 was $7.25 per hour and Alabama did not have a minimum wage law that required a higher wage.  https://www.dol.gov/agencies/whd/state/minimum-wage/history (last visited on December 3, 2020).

1.5 and multiplying that product by 22 hours. (See Plaintiff's calculations: Doc. 36, PageID.178-182).

## II.     Summary Judgment Standard.

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P.56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).

In situations where the nonmoving parties fail to respond to a motion for summary judgment, the Court's responsibility is as follows:

> Because Rule 56(a) specifies that summary judgment may be entered only when the record evidence shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law, "the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion." *United States v. One Piece of Real Property Located at 5800SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004) (citation omitted). On the other hand, the Court's review when defendants do not respond to a motion for summary judgment is less searching than when they do respond. "The district court need not *sua sponte* review all of the evidentiary materials on file at the time the motion is granted but must ensure that the motion itself is supported by evidentiary materials. At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment." *One Piece of Real Property*, 363 F.3d at 1101-1102 (internal citation omitted). Should this review reveal the plaintiff's entitlement to summary judgment, under *Resolution Trust Corp., supra*, the Court will not consider any legal or factual arguments the defendants could have, but have not asserted in opposition.

*Whitney Bank v. Peavy*, No. CV 14-0080-C, 2014 WL 12573672, at \*4 (S.D. Ala. July 31, 2014).

### III.    Discussion.

#### A.    FLSA Claim.

In the sole count of the complaint, Plaintiff presents a FLSA claim for unpaid overtime compensation. (Doc. 1 ¶¶ 7–12). 29 U.S.C. § 207(a)(1) provides for mandatory overtime compensation "at a rate not less than one and one-half times the regular rate" for each hour worked in excess of forty hours in a given workweek. "If a covered employee is not paid the statutory wage, the FLSA creates for that employee a private cause of action against his employer for the recovery of unpaid overtime wages and back pay." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011) (citing 29 U.S.C. § 216(b)). A necessary component of this claim is proof that Plaintiff was "covered by the FLSA" at all material times. *Id.* (internal quotation omitted). Plaintiffs have two pathways to proving coverage, either through proof of "individual coverage" or "enterprise coverage." *Id.* at 1298–99; *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1265-66 (11th Cir. 2006).

##### *1. Individual Coverage*

Plaintiff's burden to establish individual coverage was to provide sufficient factual content to prove that "he was (1) engaged in commerce or (2) engaged in the production of goods for commerce." *Thorne*, 448 F.3d at 1266 (citing 29 U.S.C. § 207(a)(1)); *see also Mayo v. Metropolitan Lodging Enterprises, LLC*, 2011 WL 13232260, \*4 (N.D. Ala. July 18, 2011) *report and recommendation adopted* 2011 WL 13232203 (N.D. Ala. Sept. 19, 2011) (The FLSA's protections "apply [] to employees who are 'engaged in commerce or in the production fo goods for commerce[.]'"). Commerce is defined as "trade, commerce, transportation, transmission, or

communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).  Since it does not appear that Plaintiff's evidence would establish that he was involved in "the production of goods for commerce," the sole remaining question is whether Plaintiff was "engaged in commerce" when he worked at the hotels and, thereby, was covered as an individual under the FLSA. *Accord Russell v. Continental Restaurant, Inc.,* 430 F.Supp.2d 521, 525 (D. Md. May 12, 2006).

Indirect or sporadic engagement in interstate commerce is insufficient: "[F]or an employee to be 'engaged in commerce' under the FLSA he must be directly participating in the actual movement of persons or things in interstate commerce by ... regularly using the instrumentalities of interstate commerce in his work, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or travel. *Thorne*, 448 F.3d at 1266; *see also Martinez v. Palace*, 414 F. App'x 243, 245 (11th Cir. 2011). In the instant case, Plaintiff alleges that individual coverage existed under the FLSA because both hotels are located in close proximity to highways (I-10 and Highway 59) traveled to the beaches located in Baldwin County and regularly had guests who arrived in vehicles with out-of-state license plates, who checked in providing identification from other states. Further proof that Plaintiff was engaged in interstate commerce was the fact that his duties included occasional cleaning responsibilities and both hotels regularly purchased products for the operation of the hotels (like cleaning supplies, and laundry supplies) from out-of-state companies. (Doc. 34-1, PageID.133).

This evidence is insufficient, however, to prove that the Plaintiff was engaged in interstate commerce.  While Plaintiff avers that some unknown number of hotel guests were frequently from out of state, he does so generally and not in any way that would tend to prove that he was engaged in interstate commerce as opposed to providing services of a local nature. The Complaint does not

contain any allegations indicating that Plaintiff's interactions with out-of-state customers in any way implicated interstate commerce or instrumentalities of interstate commerce.  In other words, Plaintiff has failed to allege that he used any instrumentalities of interstate commerce to perform his duties with the hotels other than vague and apparently sporadic use of cleaning supplies.

Evidence that the hotel was engaged in interstate commerce by catering to out-of-state guests does not establish that the Plaintiff was personally engaged in interstate commerce.  *Mayo* makes clear "[i]ndividual coverage . . . deals with the relationship of the **employee** to interstate commerce, not the employer's relationship to interstate commerce." *Id.* at *4; *see also id.* ("'The phrase "engaged in commerce" reflects Congress's intent to regulate "only activities constituting interstate commerce, not activities merely affecting commerce." . . . As the Supreme Court has stated, Congress did not intend to exercise the full scope of its power under the Commerce Clause in the FLSA. . . . Therefore, to establish individual coverage [a plaintiff] must show that he was engaged in the "actual movement of persons or things in interstate commerce."'" Stated somewhat differently, "[a]n employee is [] 'engaged in commerce' when his activities are 'so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated, local activity.'" *Davis v. Patel,* 2016 WL 4160967, *7 (M.D. Tenn. Aug. 5, 2016), quoting *Usery v. Yates,* 565 F.2d 93, 96 (6th Cir. 1977), in turn quoting, *Mitchell v. Lublin, McGaughy & Assocs.,* 358 U.S. 207, 212 (1959). "Or, as more recently and granularly articulated by the Eleventh Circuit, an individual is 'engaged in commerce' within the meaning of the FLSA when he 'directly participat[es] in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, *e.g.,* transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, *e.g.,* regular and recurrent use of interstate

telephone, telegraph, mails, or travel.'" *Id.,* quoting *Thorne v. All Restoration Servs., Inc.,* 448 F.3d 1264, 1266 (11th Cir. 2006).

Here, as in *Davis,* working at the front desk of the hotels, Plaintiff has not proven he worked for an instrumentality of interstate commerce, "which is typically understood as being a means of transportation or communication between the states[,]" *id.,* citing *Thorne,* 448 F.3d at 1266, and a hotel/motel is not identified in Department of Labor regulations as an instrumentality of interstate commerce, etc., and Plaintiff has not cited any "caselaw establishing that a hotel is an 'instrumentality of interstate commerce' for purposes of the FLSA[.]" *Id.* at *8. Secondly, and importantly, as in *Davis,* Plaintiff has not put forth sufficient evidence for this Court to find that he "'regular[ly] and recurrent[ly]' used instrumentalities of interstate commerce in the course of [his] work at the front desk of the [h]otel [or otherwise]." *Id.* Therefore, this case is nothing like *O'Quinn v. Country Inn, Inc.,* 2019 WL 1968051, *4 (W.D. Ark. Apr. 9, 2019),* in which the Court denied the Defendants' motion for summary judgment, with the Court finding that Plaintiff had "produced evidence from which a reasonable jury could determine Plaintiff qualified for individual coverage under the FLSA by regularly using instrumentalities of interstate commerce in her work." *Id.; see also id.* ("Plaintiff was a resident manager at Defendants' hotel from approximately July of 2017 to February of 2018. Defendant hotel marketed themselves as a resort location for both in-state and out-of-state guests. Plaintiff's job duties included checking in guests, checking out guests, cleaning the resort, answering the telephone and taking reservations. Defendant issued Plaintiff a company cell phone and required Plaintiff to keep her cell phone with her at all times so she would always be able to answer company calls. Plaintiff would receive calls from guests or potential gusts who lived outside the State of Arkansas. Additionally, Plaintiff made reservations, answered questions about the hotel and otherwise assisted out-of-state guests or

potential guests every day. Individuals whose work involves the continued use of the interstate mails, telegraph, telephone or similar instrumentalities for communication across state lines are covered by the FLSA. Further, Plaintiff would use the Internet to process payments for out-of-state guests, and when the credit card payment was completed, Plaintiff would typically send an email to the out-of-town guests to confirm their payment had been processed. It is well-settled that '[t]he internet is an instrumentality of internet commerce.'").

"Based on the evidence that is now in the record, . . . there is not sufficient evidence—as a matter of law—to support the inference that, in working at the [h]otel front desk [and the other cleaning duties], the plaintiff[] w[as] 'engaged in commerce' within the meaning of the FLSA[,]" *Davis, supra,* at *9.

### 2. Enterprise Coverage

To invoke enterprise coverage, a plaintiff must present facts to suggest that his employer has (1) "'employees engaged in commerce or in the production of goods for commerce, or ... employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person,'" and (2) "has at least $500,000 of 'annual gross volume of sales made or business done.' " *Polycarpe v. E & S Landscaping Serv., Inc.*, 616 F.3d 1217, 1220 (11th Cir. 2010) (citing 29 U.S.C. § 203(s)(1)(A)(i) and (ii)). Since Plaintiff has failed to provide any evidence to support an enterprise coverage theory, especially evidence of the annual gross volume of sales of the hotels, the evidence presented will not support coverage under this theory.

### B. Defendants' Motion(s) for Extensions.

The Plaintiff's Motion for Summary Judgment was timely filed August 5, 2020. On September 1, 2020 the two individual defendants filed a motion to extend the deadline to respond,

along with a concurrent request by Defendants' counsel for leave to withdraw because Defendants were "unable to fulfill" agreed upon financial obligations. (Doc 37, PageID.183)  That motion for an extension of time was granted and the deadline for the Defendants to respond was extended to September 30, 2020. (Doc. 38)  On September 24, 2020 Rick Patel and Rick Patel, Jr. signed and filed a "Request Motion for Extension of Time" in which "Defendants" asked for an extension of 45 days and set out efforts to retain new counsel. On September 29, 2020 Defendants filed what is captioned "Motion for Summary Judgments, Extension of Time And For Mediation For The Case." (Doc. 42, PageID.196)  This submission was signed by Rick Patel and Rick Patel, Jr.  In substance, that submission stated that "Defendants" were unable to retain attorneys "personally as well as for the business . . ." and, therefore, requested another extension of the deadline to file summary judgment-related submissions, and requested "one more mediation."

A teleconference hearing was held on October 13, 2020 attended by Plaintiff's counsel and Rick Patel.  Mr. Patel was advised during that conference that he certainly could continue his efforts to obtain counsel but that the Court was not persuaded that a continuance was necessary. Since the hearing, the only attorney that has appeared on behalf of any of the Defendants is Jonathan A. Semach who appeared specially to file a suggestion of bankruptcy on behalf of Bay Inn & Suites Loxley, LLC. (Doc. 49, PageID.207)

The initial Scheduling Order in this matter was entered on August 2, 2019 with provisions for limited discovery. (Doc. 12, PageID.55) When the parties were unable to reach an early settlement, a Rule 16(b) Scheduling Order was entered March 26, 2020 (Doc. 30, PageID.107) A Final Pretrial Conference was set October 6, 2020 and a trial on a date to be determined in November, 2020.  The discovery deadline was July 22, 2020 and dispositive motions were due on or before August 5, 2020.

The individual Defendants have not provided this Court with good cause for any further extensions of time, and the reasons proffered by the Defendants for requiring yet more time are not the sort of reasons that would lead the Court to conclude that additional time will result in any change in circumstances.  The same is true for Bay Inn & Suites of Foley, LLC, a corporate entity that must be represented by counsel and cannot be represented by the individual Defendants because they are not licensed attorneys.  Corporate defendants may not impair the ability of opposing parties to proceed with their claims simply by not employing counsel.  They are required to exercise reasonable efforts to retain counsel to not create indefinite delays that are prejudicial to the rights of a Plaintiff to proceed.  For these reasons, Defendants' requests for further extensions are **DENIED**.  The Court need not rule on Defendants' request for "mediation."  The Court will not Order mediation, but the parties may seek out any alternative dispute resolution process they may agree to.

### C. **Defendants' Motion for Summary Judgment**.

The submission by Defendants that is captioned, in part, a "Motion for Summary Judgment" is also **DENIED**.  If intended as a dispositive motion, it was not timely filed and no request to accept it for filing *nunc pro tunc* was made.  In substance, it is not a dispositive motion that complies in any way with either the Federal Rules of Civil Procedure or this Court's Local Rules, and it specifically contains none of the content required for a summary judgment motion.  To the extent it was filed on behalf of Bay Inn & Suites Foley, LLC, it is rejected as improper since it was not filed by an attorney.

### IV. **Conclusion**.

For the reasons stated above:

1.   Plaintiff's Motion for Partial Summary Judgment (and Incorporated Brief) (Doc. 35 PageID.162) is **DENIED**;

2.    Defendants' "Request Motion for Extension of Time" (Doc. 39, PageID.186) is **DENIED**;

3.    Defendants' "Motion for Summary Judgments, Extension of Time and for Mediation for the Case" (Doc. 42, PageID.196) is **DENIED**; and

4.    Defendants "Request Motion to Dismiss Summary Judgment" filed October 26, 2020 (Doc. 48, PageID.203) is **DENIED**.

**DONE** and **ORDERED** this 15th day of June, 2021.

s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE

13