## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **WILLIAM M. SPEARS, JR.,** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO. 1:19-00269-C** |
| | ) |
| **BAY INN & SUITES FOLEY, LLC,** | ) |
| **BAY INN & SUITES LOXLEY, LLC,** | ) |
| **BAY INN & SUITES OF LOXLEY, INC.** | ) |
| **RICK PATEL A/K/A RASIK PATEL,** | ) |
| **AND RICK PATEL, JR. A/K/A SUNNY** | ) |
| **PATEL,** | ) |
| **Defendants.** | ) |

## <u>ORDER</u>

This action came before the Court for a nonjury trial held on February 16, 2022 through February 17, 2022 at which the FLSA claims alleged by Plaintiff William M. Spears, Jr. against Defendants Rick Patel, Sr. (a/k/a Rasik Patel); Rick Patel, Jr. (a/k/a Sunny Patel); Bay Inn & Suites Loxley, LLC, and Bay Inn & Suites Foley, LLC were tried.[1] Upon consideration of the arguments and evidence presented at trial, the parties' post-trial briefs (Doc. 109; Doc. 110; Doc. 111), and all other pertinent portions of the record, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

### I.    *Procedural History*

Spears initiated this action by filing a complaint against Defendants alleging two FLSA violations. (Doc. 1, amended by Doc. 70). As set forth in the Supplemental Joint Pretrial Document

---

[1]  Only Defendants Rick Patel, Sr.; Rick Patel, Jr.; and Bay Inn & Suites Loxley, LLC, represented by Michael L. Jackson, Esq., were present for the bench trial. For purposes of this order, these parties will be referred to collectively as "Defendants." Defendant Bay Inn & Suites Foley, LLC was not represented at trial, but had filed a responsive pleading to Spears's initial complaint. When applicable, Bay Inn & Suites Foley, LLC will be addressed separately.

(Doc. 99), Spears submits two claims for relief: Defendants Rick Patel, Sr.; Rick Patel, Jr.; Bay Inn & Suites Loxley, LLC, and Bay Inn & Suites Foley, LLC (1) paid him less than the minimum wage required by 29 U.S.C. § 206(a); and (2) failed to compensate him for overtime as required by 29 U.S.C. § 207(a).[2] (*See* Doc. 99, PageID.551). Prior to trial, Spears moved for partial summary judgment (Doc. 35), but the Court denied the motion after full briefing (Doc. 59).

## II.     *Findings of Fact*

The FLSA claims in this case arise from William Spears's employment as a front desk clerk with various hotel entities owned and operated by Rick Patel, Sr. Spears met Rick Patel, Sr. ("Patel") and Rick Patel, Jr. ("Sunny") in 2011 and began working for the former's Bay Inn & Suites Bay Minette, LLC. Starting in May 2014, Spears worked for Patel's Bay Inn & Suites Foley, LLC until November 2016. Spears then transferred to work for Patel's Bay Inn & Suites Loxley, LLC until March 2019.

During his employment with these entities, Spears worked from 5 p.m. to 3 a.m. Monday through Friday, then noon to midnight on weekends. In total, Spears worked at least sixty two hours every week.[3] (Doc. 105, PageID.992). For pay, Spears received a check signed by Mr. Patel or Sunny on behalf of the appropriate hotel entity for $700 during his employment at the Foley

---

[2]  The triable issues of law and fact joined in this matter are confined to those delineated in the Supplemental Joint Pretrial Document (Doc. 96), which incorporates the Superseding Pretrial Order (Doc. 99). To the extent that any party argues for adjudication in its favor of a triable claim or defense not identified in the Supplemental Joint Pretrial Document, that argument is rejected because, as the Court previously explained, the Joint Pretrial Document "constitute[s] the final statement of the issues involved in this action" and "govern[s] the conduct of the trial, and form[s] the basis for any relief afforded by the court." (Doc. 96, PageID.481).

[3]  Spears's reported schedule actually totals seventy-four hours per week. The parties have stipulated, however, that Spears worked sixty-two hours per week for purposes of calculating damages. (Doc. 99, PageID.555).

location, and $750 while at the Loxley location. Spears also received lodging in the form of an on-site hotel room, which the parties stipulate as worth $630 per week.

Spears's primary duty as a front desk clerk was to check guests in and take reservations, although he occasionally helped other hotel staff with housekeeping and maintenance. In handling check in and reservations, Spears would frequently accept reservations and payments over the phone. Guests would pay with cash or credit cards, with the latter being more common. Each guest checking in also provided Spears with an ID. Based on these IDs, Spears determined that about half of all guests came to the hotel from beyond the state of Alabama. (Doc. 105, PageID.993).

While Patel served as the chief decisionmaker for the hotels' operations, Sunny also served as an immediate supervisor for Spears. Sunny scheduled Spears's shifts, gave him job assignments, and signed many of his paychecks. While Sunny would only sign Spears' paychecks at the direction of Patel, Sunny was authorized to sign checks on behalf of the Loxley and Foley hotel entities. (Doc. 105, PageID.1036–39). Sunny would also direct Spears to assist him with occasional maintenance tasks or errands.

### III.  *Conclusions of Law*

For Spears to prevail on his FLSA claims, he must prove that Defendants Rick Patel, Sr.; Rick Patel, Jr.; Bay Inn & Suites Loxley, LLC, and Bay Inn & Suites Foley, LLC (A) were covered by the FLSA; (B) were "employers" under the FLSA; (C) failed to appropriately compensate him for overtime; (D) failed to pay him the minimum wage; and (E) owe him a sum certain in damages. As set out below, Spears meets each of these burdens.

### A.  FLSA Coverage

Under the FLSA, an employer is required to provide a minimum wage and overtime compensation to individual employees engaged in commerce or to all employees if the enterprise

itself is engaged in commerce. *See* 29 U.S.C. § 206(a); 29 U.S.C. § 207(a). The Eleventh Circuit

explained the scope of the individual coverage provision as follows:

> [F]or an employee to be "engaged in commerce" under the FLSA, he must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, e.g., transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel.

*Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006). For example, an

employee "provide[s] a legally sufficient basis for a reasonable jury to find" individual coverage

under the FLSA by demonstrating that he "makes three to five phone calls per week to out-of-state

customers and vendors." *St. Elien v. All Cnty. Env't Servs., Inc.*, 991 F.3d 1197, 1198 (11th Cir.

2021).

Spears argues that his regular handling of credit card transactions and phone

correspondence with out-of-state guests satisfies the requirements for individual coverage. (Doc.

109, PageID.1261). Citing Patel's testimony, Defendants contend that Spears "did not meet his

burden of showing that he had enough regular and substantial involvement in interstate commerce

for there to be individual coverage under the FLSA." (Doc. 110, PageID.1298).

The Court finds that Spears demonstrated sufficient engagement in commerce for

individual coverage under the FLSA. Spears summarized the ample evidence in favor of this

conclusion:

> Plaintiff testified that as a front desk clerk his primary duties were to check guests in/ out and to handle phone reservations. (Doc. 105, PageID. 992, 995) Reservations were also received by fax from third parties. (Doc. 105, PageID. 1005-1006) When phone reservations were taken the guests provided their name, address, phone number and credit card information. (Doc. 105 PageID. 994-995) Reservation confirmations were sent by email. (Doc. 105, PageID. 1004-1005) Plaintiff testified that more of the guests paid with credit cards than cash. At the Loxley and Foley hotels about 50% or more of the guests made advance reservations. (Doc. 105, PageID. 1014).

Both guests with reservations and those who arrived on a walk-in basis had their identifications verified (to match credit card information) when they checked-in, and then the credit card was run. (Doc. 105, PageID.992-993, 995) When a room is paid for in cash, a deposit is required on a credit card and when guests choose to pay by credit card (or are charged for incidentals) the credit card transaction is via computer online.  (Doc. 105, PageID. 1075-1077) Debit card usage is the same. (Doc. I 05, PageID. 1077) All guests who checked in provided identification. Mr. Spears testified that at least half the hotels' guests were out-of-state, and that out-of-state guests arrived essentially every night.

(Doc. 109, PageID.1261–62). Spears' frequent communications with out-of-state guests surpasses the "three to five" interstate communications that the *St. Elien* court held to be legally sufficient for a reasonable factfinder to find individual coverage. These communications, combined with Spears's frequent handling of credit card transactions, emails, and online reservations demonstrate that Spears was engaged in commerce, triggering minimum wage and overtime obligations for Defendants under the FLSA.

Defendants attempt to distinguish *St. Elien*, but their arguments are misplaced. They insist that the *St. Elien* court held only that an employee's assertion that she handled three to five interstate calls each week presented "sufficient evidence to go to a jury" on the question of individual coverage—not that there was, in fact, independent coverage. (Doc. 110, PageID.1296). This portrayal of the *St. Elien* Court's holding, however, makes no impact here as the Court finds that Spears's primary duties involved substantially more interstate contact than the employee in *St. Elien*. The *St. Elien* Court held that three to five calls per week "*provide[d] a legally sufficient basis for a reasonable jury to find* that the employee falls within the coverage of the Fair Labor Standards Act"—so the increased interstate involvement of Spears will also support an individual coverage finding.

Defendants also emphasize that Spears's involvement in credit card transactions is not sufficient to trigger individual coverage, citing *Thorne* and *Kitchings v. Florida United Methodist*

5

*Children's Home, Inc.,* 393 F. Supp. 2d 1282, 1293 (M.D. Fla. 2005). (*See* Doc. 110, PageID.1297). These cases, however, did not hold that credit card transactions are *not* instrumentalities of interstate commerce—instead, they both find that the employee did not present sufficient evidence of their use to demonstrate individual coverage. *See Thorne,* 448 F.3d at 1267 ("Even assuming, without deciding, that credit card transactions alone could constitute an instrumentality of interstate commerce, [the employee] did not produce sufficient evidence of interstate activity to overcome [the employer's] Rule 50 motion."); *Kitchings*, 393 F. Supp. 2d at 1292 (holding that the employees failed to support assertions of credit card use, among other alleged involvement with commerce, with facts a court can consider on summary judgment). Further, Spears's involvement with credit card transactions is not his sole claim to involvement with instrumentalities of commerce: these transactions combine with his handling of phone calls from out of state guests and online reservations. Accordingly, Spears has presented sufficient evidence demonstrating individual coverage under the FLSA.

## B.  Individual Liability of Sunny Patel

"The FLSA creates a private right of action against any "employer" who violates its minimum-wage or overtime provisions." *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1309 (11th Cir. 2013) (citing 29 U.S.C. § 216(b)). The Eleventh Circuit explains that

> [the FLSA] defines the term "employer" broadly to include "both the employer for whom the employee directly works as well as 'any person acting directly or indirectly in the interests of an employer in relation to an employee.' " *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011) (quoting 29 U.S.C. § 203(d)).

*Id. "*Whether an individual falls within this definition 'does not depend on technical or 'isolated factors but rather on the circumstances of the whole activity.' " *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008) (quoting *Hodgson v. Griffin & Brand of*

*McAllen, Inc.*, 471 F.2d 235, 237 (5th Cir. 1973)).[4] "[I]n order to qualify as an employer under the FLSA, a supervisor "must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Lamonica*, 711 F.3d at 1313 (quoting *Alvarez Perez*, 515 F.3d at 1160). This would involve "control over 'significant aspects of [the company's] day-to-day functions, including compensation of employees or other matters in relation to an employee.' " *Id.* at 1314 (quoting *Alvarez Perez*, 515 F.3d at 1160). "[W]hile control need not be continuous, it must be both substantial and related to the company's FLSA obligations." *Id.*

Spears argues that Sunny should be individually liable as an employer under the FLSA because he often served as his immediate supervisor. (Doc. 109, PageID.1270). Spears emphasizes that Sunny issued daily work assignments and occasionally signed his paychecks on behalf of the hotel entity. (*See* Doc. 109, PageID.1270–71). Sunny contends that he cannot be liable under the FLSA because he is a W-2 employee of the hotel entities. (Doc. 110, PageID.1300). Further, Sunny notes that he testified that his supervision of Spears was infrequent, and that any payments to Spears occurred at the direction of Patel.

The credible testimony presented at trial demonstrates that Sunny qualifies as an employer under the FLSA. In his post-trial brief, Spears recounts the myriad evidence supporting this fact:

> Plaintiff testified that Sunny Patel was his immediate supervisor who on a day-top-day basis was his primary supervisor. (Doc. 105, PageID. 996-999, 1012-1013) As detailed below, sometimes Mr. Patel, Sr. claims to supervise day-to-day operations from Florida; sometimes he denies involvement in day- to-day operations. Either of those stories is consistent with Plaintiff's testimony that Sunny Patel was his day-to-day supervisor.   Sunny Patel actually lived at the hotel where Plaintiff worked. (Doc. 105, PageID. 998, 1036) Sunny Patel gave him job assignments, scheduled his shifts and was personally involved in any "extracurricular" work assignments (moving repair equipment, painting, ceiling repairs, etc.). (Doc. 105, PageID. 996-997, 1007-1008, 1012-1013) Sunny Patel and Plaintiff interacted frequently about

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit issued prior to October 1, 1981.

room rental rate changes and Sunny Patel gave Plaintiff specific instructions on raising and lowering rates. (Doc. 105, PageID. 1006, 1013) Sunny Patel had a yellow notepad where he left written assignments, and he also provided assignments to Plaintiff verbally. If there was a problem with a room or a guest Plaintiff would notify Sunny Patel if he was available. (Doc. I05, PageID. 997) Sometimes, Sunny Patel signed his paychecks. (Doc. 105, PageID. 998, Def. Ex. 21)

Sunny Patel testified that he paid Plaintiff on instructions from Mr. Rick Patel, Sr. (Doc. 105, PageID. 1036) He had authority to sign checks on behalf of both hotels. (Doc. 105, PageID. 1039-1040) He also testified that he did not know anything about what the FLSA required "because that's not the part I handle. I **handle more day-to-day operations"** which included training front desk clerks. (Doc. 105, Page Id. 1071-1072)

(Doc. 109, PageID.1270–71) (emphasis in original). In short, Sunny's assignment of daily tasks, his occasional issuance of checks, his authorization to sign checks on behalf of the hotel entities, and training of front desk clerks all combine to demonstrate that he handled day-to-day operations and supervised Spears. *See Lamonica*, 711 F.3d at 1309. This management of "significant aspects" of the hotel entities' day-to-day functions, as well as his supervision of Spears is sufficient to establish Sunny as an employer under the FLSA. *See Lamonica*, 711 F.3d at 1314 (quoting *Alvarez Perez*, 515 F.3d at 1160).

While Sunny insists that his status as an employee of the hotel entities means he cannot be an "employer" under the FLSA, the Eleventh Circuit has rejected this formalistic view. Specifically, the Eleventh Circuit explained that *"*[w]hether an individual falls within this definition 'does not depend on technical or 'isolated factors but rather on the circumstances of the whole activity.' " *Alvarez* Perez, 515 F.3d at 1160 (quoting *Hodgson*, 471 F.2d at 237). Instead, the FLSA broadly defines an "employer" as "any person acting directly or indirectly in the interests of an employer in relation to an employee." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011) (quoting 29 U.S.C. § 203(d)). Here, Spears's credible testimony established that Sunny was responsible—at least in part—for day-to-day operations and directly

8

supervised his daily tasks. Sunny attempts to minimize his role in managing daily operations at the hotels and his supervision of Spears, yet the undersigned finds his testimony inconsistent, self-serving, and ultimately, lacking in credibility. Accordingly, Sunny qualifies as an employer under 29 U.S.C. 203(d).[5]

## C.  Spears's Overtime Claim

Employees covered by the FLSA must receive overtime pay for hours worked in excess of 40 hours in a workweek. 29 U.S.C. § 206(a). "An unpaid-overtime claim has two elements: (1) an employee worked unpaid overtime, and (2) the employer knew or should have known of the overtime work." *Bailey v. TitleMax of Georgia, Inc.*, 776 F.3d 797, 801 (11th Cir. 2015) (citing *Allen v. Bd. of Pub. Educ. for Bibb Cnty.,* 495 F.3d 1306, 1314–15 (11th Cir.2007)).

Here, Defendants concede that Spears worked more than forty hours per week. (Doc. 99, PageID.555). Combined with the Court's above-mentioned findings regarding FLSA coverage and Sunny's employer status, Defendants were obligated to pay Spears for overtime pursuant to the FLSA. Under 29 U.S.C. § 207(a)(1), Spears is entitled to be paid one and one half times his regular rate of pay for hours worked beyond a forty-hour workweek. Because the regular rate of pay cannot be less than minimum wage, *see* 29 C.F.R. § 778.107—and Defendants paid Spears less than this, *see infra* Section III.D—it necessarily follows that Defendants failed to comply with the FLSA's

---

[5]  Neither party disputes that Patel qualifies as an employer under the FLSA (Doc. 99, PageID.554). The parties also agree that Spears was employed by Bay Inn & Suites, Foley LLC and Bay Inn & Suites, Loxley, Inc. (Doc. 99, PageID.554). The Court finds that Patel's substantial involvement in dictating the terms of Spears's employment and pay, combined with his control of Bay Inn & Suites, Loxley LLC (*see* Doc. 105, PageID.1180–86) establishes this entity as one of Spears's employers as well.

overtime obligations.[6] Accordingly, Spears is entitled to damages on his overtime claim. The amount of these damages will be discussed in Section III.E.

## D.  Spears's Minimum Wage Claim

Employees covered by the FLSA must receive at least $7.25 per hour in wages. 29 U.S.C. § 206(a). Here, the parties agree that Spears received in compensation by check each week.[7] (*See* Doc. 99, PageID.556–559). The parties disagree, however, whether (1) Spears received additional payments through a payroll service; and (2) the value of Spears's lodging can be credited towards his minimum wage. Each issue is discussed in turn.

### 1.  *Payroll Service Payments*

Defendants insist that Spears received payments of $145 every two weeks from SourcePointe, their payroll provider. As evidence of these payments, Defendants point to Nos. 6 & 21 of their trial exhibits. These exhibits consist of documents labeled "Employee Earnings Detail" from SourcePointe indicating that throughout Spears's employment with Defendants, he was issued a check for twenty hours worked over a two week span at a rate of $7.25 with a lower net pay after withholdings. (*see* Doc. 104, PageID.649–56; Doc. 104, PageID.705–712). Defendants explain that the SourcePointe checks referenced in these earnings summaries did not go to Spears—instead, the checks were direct deposited in Defendants' account and Spears collected the amount due in cash from the night deposit to help him avoid cash checking fees. (Doc. 110,

---

[6]  The fluctuating workweek method does not save Defendants for this same reason. *See* 29 C.F.R. § 778.114(a)(3) (permitting an employer to use this method to comply with the FLSA's overtime requirements only when the regular rate of pay is more than minimum wage). Also, the same facts and reasoning discussed in this section demonstrates that Defendant Bay Inn & Suites Foley, LLC failed to comply with the FLSA's overtime obligations.

[7]  The supplemental pretrial order references Spears's Trial Exhibit No. 1, but this exhibit was not admitted at trial. Instead, Spears opted to adopt Defendants' Exhibit No. 21 in its stead—which is duplicative of Spears's Exhibit No. 1, but without significant redactions.

PageID.1305); *see also* (Doc. 105, PageID.1132–33). Because of this documentation, Defendants argue that Spears's otherwise relaxed burden of proving his wage—a product of Defendants' lack of records for other details of Spears's employment—should not apply for these partial payments from SourcePointe. (*See* Doc. 110, PageID.1304).

Spears argues that these documents are unreliable because Defendants presented "no testimony about how the document was prepared, what it was based on, or whether any of it is accurate." (Doc. 111, PageID.1321). At trial, Spears denied ever receiving payments in the amount listed in the SourcePointe earnings summaries. Spears did acknowledge receiving non-itemized pay stubs from SourcePointe as well as occasional cash payments from Defendants. (Doc. 105, PageID.1028–31). When Spears questioned Sunny about the SourcePointe pay stubs, Sunny told Spears not to worry about it. (Doc. 105, PageID.1019).

While an FLSA plaintiff bears the burden of proving that he was improperly compensated, an employer's inadequate records can lessen this burden:

> "When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records." [*Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), *superseded by statute on other grounds as stated in Bonilla v. Baker Concrete Constr., Inc.,* 487 F.3d 1340, 1344 n. 6 (11th Cir. 2007)]. However, "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes," a relaxed burden-shifting scheme applies. *Id.* Under this scheme, an employee carries his burden to prove damages if (a) "he proves that he has in fact performed work for which he was improperly compensated"; and (b) "he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.; see also Morgan v. Family Dollar Stores*, Inc., 551 F.3d 1233, 1278–79 (11th Cir. 2008). The burden then shifts to the employer to produce "evidence of the precise amount of work performed" or to negate "the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Anderson,* 328 U.S. at 688, 66 S.Ct. 1187; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.,* 495 F.3d 1306, 1315–16 (11th Cir. 2007).

*Torres v. Rock & River Food Inc.*, 244 F. Supp. 3d 1320, 1332 (S.D. Fla. 2016).

Defendants' records regarding the SourcePointe payments to Spears are inadequate. Defendants' assertion that the SourcePointe records reflect the partial wage paid to Spears is belied by Patel's own testimony. Patel explains that the SourcePointe checks were paid to his account and Spears would collect the amount owed from the hotel entities' night deposits. (Doc. 105, PageID.1132–33). However, Defendants did not produce any record of this cash payment to Spears—in fact, Defendants conveniently discarded any record of this cash exchange every month or two. (Doc. 105-1, PageID.1177). Nor did Defendants produce their own bank records to show bimonthly deposits of $145 from SourcePointe. (*See* Doc. 105, PageID.1164–65). In short, Defendants' unverified SourcePointe earnings statements are inadequate because, as Patel explains, they do not show that Spears ever received a payment of $145 in cash pursuant to their purported agreement. Accordingly, Spears need only show that he performed work for which he was not properly compensated by "just and reasonable inference." *See Morgan*, 551 F.3d at 1278–79.[8]

## 2. *Value of Lodging for Minimum Wage*

Defendants contend that the value of the lodging they provided Spears during his employment should be credited towards his wage. The parties agree that Spears received lodging in the form of living accommodations valued at $89.50 per day—rounded to $630 per week, presumably for ease of calculation. (Doc. 99, PageID.556). The parties dispute, however, whether Defendants are entitled to credit Spears's lodging towards his minimum wage claim.

The value of lodging can be credited towards an employee's wage, but the employer bears the burden of proof. *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 473–74 (11th Cir. 1982). Employers can prove the value of the lodging to be credited as wages by providing records

---

[8] Defendants do not point to any other records they have produced that would disentitle Spears from this reduced burden.

mandated by the FLSA and its accompanying regulations[9] or by submitting a determination of cost from the Department of Labor's Wage and Hour Division.[10] *See id.* at 475. "An employer's unsubstantiated estimate of his cost, where the employer has failed to comply with the recordkeeping provisions of the FLSA, and where there has been no determination of reasonable cost by the Wage and Hour Division does not satisfy the employer's burden of proving reasonable cost." *Caro-Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500, 1514 (11th Cir. 1993) (quoting *Donovan,* 676 F.2d at 475).

Here, Defendants provided no records *at all* documenting the value of the lodging provided to Spears. While the parties agree on the minimum value of the lodging provided, Spears expressly disputes that this value can be credited towards his compensation for minimum wage purposes. (*see* Doc. 99, PageID.556). Spears's stipulation as to the value of the lodging for the limited purposes of calculating damages does not satisfy Defendants' burden to prove the value of lodging to be credited towards its minimum wage obligations. Defendants' argument that their approved determinations of costs of lodging for other employees satisfies their burden (*see* Doc. 110, PageID.1306–07) fails for two reasons: (1) they fail to offer these determinations of cost into evidence, and Patel's inconsistent testimony serves as insufficient evidence of their substance; and (2) determinations of cost for lodging different than what Spears received are not one of the two means employers can use to prove the value of lodging, *see Donovan*, 676 F.2d at 475.[11]

---

[9]  *See* 29 C.F.R. § 516.27.

[10]  *See* 29 C.F.R. § 531.4.

[11]  Defendants also argue that if Spears receives the benefit of the lodging credit for purposes of calculating his appropriate overtime compensation, then it must also count for purposes of determining his compensation for minimum wage purposes. This argument fails, however, for the reasons set out in Section III.E.2.

Accordingly, Defendants cannot offset the minimum wage owed to Spears with the lodging he received.

Spears's credible testimony and the parties' stipulation that he received check payments establishes a fair and reasonable inference that he was paid in the amounts set out in his Exhibit No. 9 (Doc. 104, PageID.666–669). Defendants did not adequately prove that Spears received additional payments from SourcePointe or that its minimum wage obligations should be offset by the lodging they provided. Based on these facts, Spears gross weekly pay ranged from $126.92 to $189.23. This is less than the FLSA's gross minimum weekly wage of $290 for an employee working forty hours.[12] Accordingly, the Court finds that Spears's successfully demonstrated that Defendants failed to pay him the minimum wage established by the FLSA.[13]

## E.  Damages

As set out above, Spears established that Defendants are liable for failing to compensate him for overtime or pay him the minimum wage. Next, the Court will address (1) the appropriate statute of limitations; (2) the applicability of the value of Spears's lodging; (3) the applicability of the fluctuating workweek method of calculating damages; (4) an estimate of Spears's damages; and (5) the unserved Defendant Bay Inn & Suites of Loxley, Inc.

### 1.  *Appropriate Statute of Limitations*

The FLSA sets a two-year statute of limitations for minimum wage and overtime violations, unless the violation is "willful"—then, the statute of limitations is three years. 29 U.S.C. § 255(a). "To establish that the violation of the Act was willful in order to extend the limitations period, the

---

[12]  This figure is calculated by taking the FLSA's minimum wage of $7.25 and multiplying it by forty hours.

[13]  For these same reasons, the Court finds that Defendant Bay Inn & Suites Foley, LLC failed to comply with the FLSA's minimum wage obligations.

employee must prove by a preponderance of the evidence that his employer either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1162–63 (11th Cir. 2008) (quoting *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988). "The Code of Federal Regulations defines reckless disregard as the 'failure to make adequate inquiry into whether conduct is in compliance with the Act.' " *Id.* (quoting 5 C.F.R. § 551.104).

Spears argues that Defendants' extensive history with past FLSA violations, including with Spears and other similarly situated employees, makes their "near total failure" to maintain any records patently reckless. (Doc. 109, PageID.1280–81). Defendants do not address the statute of limitations issue in their post-trial brief, but their position is stated as follows in the supplemental pretrial submission:

> Defendant Rick Patel Sr. contends that his genuine understanding, after his previous DOL audit and the DOL approval of credit for the value of the lodging, was that he would be complying by paying Plaintiff a salary, not deducting from it when Plaintiff missed work, and providing a better room with more amenities, which Mr. Patel believed was sufficient to cover the overtime.

(Doc. 99, PageID.557).

The Court finds that Spears proved by preponderance of the evidence that Defendants willfully violated the FLSA as to Spears's overtime and minimum wage claims. As Spears lays out in detail (*see* Doc. 109, PageID.1280–83), the testimony and evidence presented at trial overwhelmingly demonstrate that Defendants' almost nonexistent record keeping practices represents either their knowing violation of the FLSA or a reckless disregard for the statute. The facts revealed at trial demonstrate the extent of Defendants' disregard for the FLSA:

- Patel claims responsibility for ensuring his companies comply with the FLSA, yet admits that he only "kind of" read the statute and does not know about the Code of Federal

15

Regulations. (Doc. 105-1, PageID.1223–24).

- Patel vacillated between claiming to understand what the FLSA required and admitting that he did not know many of the detailed requirements. (Doc. 105-1, PageID.1223–26).

- Patel admitted to destroying shift reports and receipts for cash transactions for front desk clerks every month or two despite claiming to know that the Department of Labor requires such transactions to be documented. (Doc. 105, PageID.1150–54).

- Sunny claims total ignorance of FLSA suits naming him as a Defendant, including a case in which counsel appeared on his behalf to acknowledge a settlement negotiated by the Department of Labor. (Doc. 105, PageID.1049–57).

- Sunny claims near total ignorance of the FLSA's requirement and admits to making no efforts to familiarize himself with the statute's requirements. (Doc. 105, PageID.1062–63).

- Patel produced four pages from a Department of Labor investigation and, when pressed on the location of the rest of the investigation's records, he offered a shifting story. Patel claimed that he was unsure of the location of the rest of the records, appearing to blame a hurricane for their destruction before claiming that he only kept the subject four pages. (Doc. 105-1, PageID.1195–98).

These facts demonstrate that Defendants either knew or should have known that their recordkeeping and pay practices violate the FLSA. Given past Department of Labor investigations into similar FLSA violations, Defendants' destruction of records of cash transactions and failure to maintain time logs for front desk clerks—many of whom had raised FLSA charges in the past— defies explanation. As Spears aptly notes, "[a]ny 'adequate inquiry' could not conceivably have led to the current state of the evidentiary record." (Doc. 109, PageID.1279). Accordingly, the Court finds that Spears has demonstrated by a preponderance of the evidence that Defendants willfully

violated the FLSA, meriting the application of a three-year statute of limitations. Spears initiated

this action on June 6, 2019 (*see* Doc. 1), making any of Defendants' FLSA violations that occurred

after June 5, 2016, compensable.[14]

## 2.  *Applicability of Credit for Spears's Lodging*

Before the Court calculates Spears's damages, it must determine whether the value of the

lodging he received may be counted as part of his wage for purposes of unpaid overtime. As set

out in Section III.D.2, Defendants failed to meet their burden of establishing that the lodging they

provided Spears may be credited towards his rate of pay for minimum wage purposes. Because the

Court declines to count Spears's lodging for his minimum wage, Defendants argue that the Court

should not count the value of the lodging for purposes of calculating Spears's unpaid overtime

wages. (Doc. 110, PageID.1307). For support, Defendants cite the FLSA's single definition of

wage set out in § 203(m), which includes the value of employer-provided lodging. (Doc. 110,

PageID.1307). Spears contends that Defendants' failure to prove their entitlement to a lodging

credit does not prevent him from collecting the value as part of unpaid overtime. (*See* Doc. 99,

PageID.559).

The Court agrees with Spears: the value of his lodging should be counted as part of his

wage to calculate his unpaid overtime even though it was disregarded for his minimum wage claim.

When employers fail to maintain employment records as required by the FLSA and an employee

has proven improper compensation by fair and just inference, a district court "may then award

damages to the employee, even though the result be only approximate." *See Allen*, 495 F.3d at

1316. The purpose of this reduced burden and approximation of damages is simple: "[t]he

---

[14]  For these same reasons, the Court finds that Bay Inn & Suites Foley, LLC willfully violated the
FLSA, making a three-year statute of limitations appropriate.

employer is in a superior position to know and produce the most probative facts concerning the nature and amount of work performed and '[e]mployees seldom keep such records themselves.' " *Id.* at 1315 (quoting *Anderson,* 328 U.S. at 687). Accordingly, the FLSA established that "[i]t is the employer's duty to keep records of the employee's wages, hours, and other conditions and practices of employment." *Id.*

Accepting Defendants' argument would effectively penalize Spears for his inability to prove his exact wage as a result of Defendants' deficient recordkeeping practices. Eleventh Circuit law is clear on two points: (1) Defendants bear the burden of proving entitlement to credit for employee lodging, *see Donovan*, 676 F.2d at 473–74; and (2) the Court may approximate Spears's damages in light of Defendants' deficient recordkeeping practices so long as Spears shows he was improperly compensated by fair and just inference, *see Allen*, 495 F.3d at 1316. Defendants fell far short of producing any form of permissible evidence showing their entitlement to a lodging credit, so the Court cannot afford them that credit to relieve them of minimum wage or overtime liability. *See supra* Section III.D.2. However, the uncontroverted evidence at trial indicates that Spears was provided with lodging, and to deny Spears the benefit of this portion of his wage "would place a premium on an employer's failure to keep proper records in conformity with his statutory duty" and "allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the [FLSA]." *Allen*, 495 F.3d at 1315–16 (quoting *Anderson,* 328 U.S. at 687). Accordingly, the Court finds that the value of Spears's lodging should be included in the calculation of his unpaid overtime.

3. *Fluctuating Workweek Method of Calculating Damages*

Defendants argue that Spears's unpaid overtime should be determined by the fluctuating workweek method set out in 29 C.F.R. § 778.114. (Doc. 110, PageID.1308). However, § 778.114

merely "sets forth one way in which an employer may lawfully compensate a nonexempt employee for fluctuating work hours; it is not a remedial measure that specifies how damages are to be calculated when a court finds that an employer has breached its statutory obligations." *Lamonica*, 711 F.3d at 1311 (quoting *Urnikis–Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 666 (7th Cir. 2010)). The fluctuating workweek method may still be used to calculate damages, but this method "is not the only or even the default method for calculating damages when an employee is paid a weekly salary." *Id.* "In fact, it is conceptually subsumed within the broader rule that '[i]f the employee is employed solely on a weekly salary basis, the regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate.' " *Id.* (quoting 29 C.F.R. § 778.113(a)). In short, "where the employee is paid solely on a weekly salary basis, the number of hours the employee's pay is intended to compensate—not necessarily the number of hours he actually works—is the divisor." *Id.* (quoting *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1269 (11th Cir. 2008)). Accordingly, the Court declines to use the fluctuating workweek method to calculate Spears's regular rate of pay. Instead, the rate of pay will be determined by the amount of hours Spears's pay was intended to compensate: sixty-two hours, as stipulated by the parties for purposes of calculating damages. (*See* Doc. 99, PageID.555).

### 4. *Spears's Damages*

As set out above, Spears is due compensatory damages for unpaid overtime and pay less than the minimum wage for Defendants' FLSA violations after June 5, 2016. Spears's regular rate of pay is calculated by (1) adding his actual pay and the stipulated value of his lodging; then (2) dividing this amount by the total hours worked (*see* Doc. 104, PageID.666-69). Spears established his actual pay—that is, the set amount he received by check each month from Defendants—by fair

and just inference, and the amounts are reflected in Plaintiff's Exhibit No. 9. (Doc. 104, PageID.666-69). The parties stipulated to a value of $630 per month for Spears's lodging (*see* Doc. 99, PageID.559) and a workweek of sixty-two hours (*see* Doc. 99, PageID.555), both of which are also reflected in Plaintiff's Exhibit No. 9. Based on these figures, the undersigned finds that Plaintiff's Exhibit No. 9 correctly calculates the regular rate of pay for purposes of damages.

To determine Spears's compensatory damages for unpaid overtime, Spear's regular rate of pay must be multiplied by the overtime hours worked. The product of these figures must then be multiplied by one and one half. 29 C.F.R. § 778.113. To determine Spears's compensatory damages for unpaid minimum wage, his actual rate of pay (not including the value of his lodging, *see infra* Section III.D.2) is subtracted from the product of the federal minimum wage ($7.25 per hour) multiplied by the non-overtime hours worked (forty). *See, e.g.*, *Groeschel v. Casey Key Fish House, Inc.*, No. 8:18-CV-2500-T-33AAS, 2019 WL 1093450, at *2 (M.D. Fla. Feb. 27, 2019) (applying the same formula for successful unpaid overtime and minimum wage claims). Based on these formulas, the undersigned finds that Plaintiff's Exhibit No. 9 correctly calculates Spear's unpaid overtime and unpaid minimum wage.[15]

Accordingly, the Court finds that Rick Patel, Sr., Rick "Sunny" Patel, Jr., and Bay Inn & Suites Loxley, LLC are jointly and severally liable[16] to Spears for $60,652.89 in unpaid overtime,

---

[15] Patel claims that Spears did not work for the hotel entities during a four to six week period after Patel sold the Foley location. (Doc. 105, PageID.1131). However, Spears testified that he never left Defendants' employ, and that his brief time spent working at the Foley location post-sale was at Patel's direction. (Doc. 105, PageID.1016). Moreover, the Court finds Patel's testimony to be highly inconsistent and self-serving, offering little probative value. The Court can only estimate the damages due to Spears given Defendants' near-complete lack of pay records, and Spears established by fair and just inference that he is entitled to damages for his employment with Defendants from June 6, 2016 until March 3, 2019, without interruption.

[16] The Court finds that Defendants operated as joint employers sufficient to establish joint and several liability under 29 CFR § 791.2(a).

$17,555.81 in unpaid minimum wage, and $78,208.70 in liquidated damages.[17] As set out in the superseding proposed pretrial order, Spears concedes that Defendant Bay Inn & Suites Foley, LLC is only liable for unpaid overtime and minimum wages during Spears's employment at the entity—specifically, $10,949.12 in unpaid overtime, $3,339.96 in unpaid minimum wage, and $14,289.08 in liquidated damages.[18] (*See* Doc. 99, PageID.560). These Defendants are to be credited for the two payments of $173.61 (totaling $347.22) already made by the "bankrupt entity." (*See* Doc. 99, PageID.560).[19]

### 5. *Defendant Bay Inn & Suites of Loxley, Inc.*

The Court cannot enter judgment against the unrepresented Defendant Bay Inn & Suites of Loxley, Inc. because Spears failed to prove that he timely served the entity with process as required by Federal Rule of Civil Procedure 4(l).[20] While an answer to the first amended complaint was filed by Patel and Sunny purportedly on the behalf of Bay Inn & Suites of Loxley, Inc. (*see* Doc.

---

[17] Per the parties' stipulation, Defendants are liable for liquidated damages in an amount equal to the compensatory damages. (*See* Doc. 99, PageID.559).

[18] The Court finds that Spears is due liquidated damages from Bay Inn & Suites Foley, LLC as well. *See Morgan*, 551 F.3d at 1282.

[19] The Court notes that while a suggestion of bankruptcy for Defendant Bay Inn & Suites Loxley, LLC was filed in this case, the bankruptcy case cited in the Middle District of Florida names "Bay Inn & Suites of Loxley, Inc." as the debtor.

[20] As for the other unrepresented Defendant—Bay Inn & Suites Foley, LLC—Spears properly served the entity with the original complaint (*See* Doc. 5). However, as an artificial entity capable of participating in this litigation only through counsel, Bay Inn & Suites Foley, LLC has not participated in this case since its counsel withdrew on September 1, 2020. (*See* Doc. 37; Doc. 38). Counsel for the represented Defendants has been clear from the onset of his participation in this case that he does not represent either Bay Inn & Suites Foley, LLC or Bay Inn & Suites of Loxley, Inc. (*See* Doc. 79). Because Bay Inn & Suites Foley, LLC filed "a denial of the plaintiff's case" through its then-counsel, the Court cannot enter a default against the entity. *Bass v. Hoagland*, 172 F.2d 205, 210 (5th Cir. 1949). Spears bore the burden of proof in making his case against the non-represented entity at trial, *see id.*, which he successfully managed here, *see supra* Section III.

73), it is well established "that a corporation is an artificial entity that can act only through agents, cannot appear pro se, and must be represented by counsel." *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985).[21] "The general rule applies even where the person seeking to represent the corporation is its president and major stockholder," *id.*, and neither Patel nor Sunny is an attorney authorized to appear before this Court. "[O]ne is not bound by a judgment in personam in a litigation in which he is not designated as a party *or to which he has not been made a party by service of process*." *Hansberry v. Lee*, 311 U.S. 32, 40 (1940) (emphasis added). Spears failed to prove that he timely served Bay Inn & Suites of Loxley, Inc., so the Court cannot enter a binding judgment against it. Accordingly, Spears is **ORDERED** to show cause why the Court should not dismiss his claims against Bay Inn & Suites of Loxley, Inc. for failure to timely effect service under Rule 4(m) no later than **August 10, 2022**.

## IV.    *Conclusion*

As set out above, Defendants Rick Patel, Sr., Rick "Sunny" Patel, Jr., Bay Inn & Suites Loxley, LLC, and Bay Inn & Suites Foley, LLC failed to compensate Spears for overtime or pay him the minimum wage as required by the FLSA. Accordingly, Defendants Rick Patel, Sr., Rick "Sunny" Patel, Jr., and Bay Inn & Suites Loxley, LLC are liable are jointly and severally liable to Spears for $78,208.70 in compensatory damages and $78,208.70 in liquidated damages. Defendant Bay Inn & Suites Foley, LLC is only liable for $14,289.08 in compensatory damages and $14,289.08 in liquidated damages. Spears is also entitled to post judgment interest at the rate set by 28 U.S.C. § 1961. Judgment will be entered separately pursuant Federal Rule of Civil Procedure

---

[21] Consistent with *Palazzo*, the Court's local rules provide that "[o]nly natural persons may appear pro se." S.D. Ala. GenLR 83.2.

58.[22] Spears's motion for attorney's fees and costs, if any, must be filed no later than **August 17, 2022**.

      **DONE** and **ORDERED** this the 27th day of July 2022.

                      */s/ William E. Cassady*
                      **WILLIAM E. CASSADY**
                      **UNITED STATES MAGISTRATE JUDGE**

---

[22]  Due to the age of the case and the uncertainty surrounding the unserved Defendant Bay Inn & Suites of Loxley, Inc., the Court finds no just reason to delay entry of final judgment as to the remaining claims pursuant to Federal Rule of Civil Procedure 54(b).